for which there will be no abstention, is In Re Gary Fox. It's Gary J. Fox, Delora A. Fox, number 06-4075. Mr. Martin and Mr. Massington. Good morning. Hang on for what let it do. While you're getting situated there, are there any students here from the Weidner University School of Law? Welcome. Pleasure having you with us today. May it please the court. My name is John Martin, and I represent the appellate in this matter, Gary Fox. At this time, your honors, I would like to reserve three minutes of my time for rebuttal, if necessary. Now, this area turned out to be, in one sense, far more complex than I had expected to see. You had cited in your favor a case called Shor. In Re Shor, your honor, out of the Western District. Your opponent had cited a case called Scholl. Correct. There's also a case from Judge McCullough called Verner. A 2005 case, yes, your honor. And maybe you could start with just some facts here. What was the date of the divorce petition here? Mr. Erwin Kline. Your honor, this case was submitted to the bankruptcy court on stipulated facts. One of the stipulated facts is that the divorce case was pending at the time that the bankruptcy case of Mr. Fox was filed. So it was pre-bankruptcy? It was pre-petition, your honor. I don't know the exact date that the divorce case was filed. I'm not Mr. Fox's divorce attorney. But it was stipulated in front of the bankruptcy court that the divorce case was pending when Mr. Fox's bankruptcy case was filed. It was also stipulated, your honor, that as the date that the bankruptcy case was filed, claims for equitable distribution had been made by both parties against each other, but they had not proceeded to a master's hearing in the divorce case. So we have divorce case filed. We have individual filing by Mr. Fox in Chapter 7. At that time, we had equitable distribution claims pending before the state court. Furthermore, your honor, Mrs. Fox and her divorce counsel appeared at the Section 341 meeting of creditors, participated in that meeting of creditors, and I think it's very important to this court to look at the fact that Mrs. Fox then filed a proof of claim in the bankruptcy case. She also filed, did she, not a 523C application for non-dischargeability? No, she did not, your honor. That's the key to this. But wasn't that under discussion and the court said there was no need to file? That's where Judge Thomas and I in the lower court, obviously that's why we're in a disagreement. What happened was she files the proof of claim. Mr. Massington was not involved at the time. And I think it's important to point out to the court what had been the procedure always in the middle district in front of Judge Thomas, which would have been in this very same set of facts, the non-debtor spouse would have filed a 523A complaint to determine dischargeability. What normally would have happened is the judge would have held that complaint. It also was filed within the 60-day time period that you have to file a complaint to determine discharge. But also 523C requires in this particular context something to be filed, does it not? Yes, it does, your honor. And she was contemplating filing that, is that correct? They missed the deadline. That's the problem. But the court said. That it doesn't matter. So what, right? Right, and I disagree with the court and I think that it does matter because she did have a claim for equitable distribution under 523 and in order to preserve that claim, she needed to file her complaint for non-dischargeability within the 60-day period following the section 341 meeting of creditors.  Of course, that depends on accepting your Shore case instead of Mr. Massey's Shoal case, right? Exactly, and that brings us right back to why I believe that the reasoning at In re Shore is the proper reason. And to me, your honors, if you look at what the court's doing at In re Shoal and then what the court did in this case, Judge Thomas, they're really trying to make this more complicated than it needs to be. And in essence, what they did is they created their own exception to discharge. In one sense, it's very complicated. In another sense, it becomes simple. Yes, Your Honor. If it is a claim, and I will concede that the definition of claim under 1015 is very broad, then there was, it can be discharged. Yes, Your Honor. If it was a property interest, it cannot be discharged. And one case said one went to the other, Berner sort of went between the two and said that there are certain things, if you're seeking in-kind distribution, it's a property interest, and it cannot be discharged. If you are seeking in payments, cash payments, in lieu of an in-kind distribution, it can be discharged because there's no way around the fact that it's not a claim. Correct, Your Honor. What was sought here? What was sought here was money, not in-kind distribution, Your Honor, but money, a money claim against assets which were solely in the name of Mr. Fox. So this would fall, even if we accept the In re Verner logic and we accept that decision, Ms. Fox's claim should still be discharged because she was seeking money. In fact, if you look at the records, Your Honor, Mrs. Fox filed a proof of claim in the amount of $300,000 in the bankruptcy case. Let's assume for the moment that you're right. Then we come back to the question of whether there can be equitable tolling for not filing the 523C non-dischargeability complaint. And the court, you said to the parties, don't worry. When did the court say this? After the deadline was missed or before the deadline? After the deadline was missed, Your Honor. Was there a request for extension of time? There was never a request for an extension of time. If I may, Your Honor, how this case comes to the appellate level is after the 60-day period of time had ran and there was no longer time to file the dischargeability complaint, Mrs. Fox's divorce lawyer proceeded to seek equitable distribution and the Pike County State Court, at which point in time I, on behalf of Mr. Fox, commenced an adversary proceeding for willful and intentional violation of the discharge provisions under the Bankruptcy Code, alleging that her claim for equitable distribution must be dismissed and that she can no longer pursue it. So your problem isn't so much with whether they filed something under 523C or not. Your fundamental problem is. They didn't file it. Well, in your view, they just, it's a claim, it's a claim, it's a claim, and you reject the notion that there's this employee property interest that can't be discharged. I mean, I don't mean to demean him with this term, but the technical filing of something under 523C or not isn't your big, isn't your topical problem. It's that she wanted money. That's really a claim. Don't let her get away with circumventing the bankruptcy system. Is that the gist of it? Any other creditor or any other type of claim which you have to go under 523 to seek an exception to discharge is governed by the 60-day rule. In my opinion, with all due respect to the lower courts in the Fox case, what they're trying to do is save Mrs. Fox from the mistake that her counsel made in not filing her 523 complaint within the 60-day window like all other similar creditors need to do. Had she filed the 523 complaint, which would have happened, Your Honor, because that's always what happened in front of Judge Thomas is that that 523 complaint would have been held in abeyance by Judge Thomas. There would have been relief from state granted to Ms. Fox to then proceed in the state court to then go through the state court proceeding to obtain a money judgment for equitable distribution, which then comes back up to the bankruptcy court or back over to the bankruptcy court, I should say, for the judge to then make his determination of whether or not it's dischargeable under 523.812. That, of course, is now a moot point after BAP-CIPA because equitable distribution in a Chapter 7 is not dischargeable. You don't have to file any more. This will never happen under BAP-CIPA again. I'm not, I guess the question I'm attempting to ask and I'm not doing it very articulately is this. If the shoal line of reasoning as opposed to the shore line of reasoning is taken, then the district court's decision is consistent with law, correct? It's not a violation of 5.3 or anything else, right? Using that theory because there was no claim and therefore she couldn't, there was no discharge of the debt. Just to flesh that out, as I understand what Shoal said, is that look, if you want to determine what is an interest in property, you look to state law. Yes. And the court said that when you look to state law, the court read the statute as saying that when you file a distribution petition in a bankruptcy proceeding, that means that the court is holding all of the property, in Latin words, in custodial legis. And therefore that is a property interest that the bankruptcy courts will defer to the state courts to decide because the person, the spouse, has a property interest in that, correct? Correct, and in fact, in that case, I think Judge Shoal, or in the Shoal case, the judge even went further. And then in the district court's opinion affirming Judge Thomas in this case, they go on to say, and in fact, once a divorce complaint is pending, the debtor doesn't really have an interest in the property anymore until it's all decided by the divorce court. Your honors, that flies in the face of the law, and it actually flies in the face of what happened in this particular case. In this particular case, the Chapter 7 trustee, Mr. Conway, actually proceeded to administer assets of Gary Fox, the debtor, selling real estate, liquidating bank accounts, creating a pool of money to pay creditors. So even if you, so the logic in Shoal and the logic which is expressed in the district court case basically says that once a divorce is filed, something magical happens to the assets of the husband and wife. They somehow come over here now where nobody can touch them. No creditor can touch them, neither the debtor. Isn't that a good thing? Yeah. To get an equitable distribution rather than to play games about when a particular piece of paper is filed. But that's actually not the reality, though, if your honor, of what happens, because that's not what happens, because a Chapter 7 trustee went ahead and administered Mr. Fox's assets in the bankruptcy case. Well, didn't the Chapter 7 trustee, or shouldn't the Chapter 7 trustee have known, hey, I'm in a divorce. I've been in a divorce before I, you know, the implication, I don't want to put word in Judge Ross' mouth, but he knew he was in a divorce proceeding. One might, you know, you can postulate, I'm not saying your client did it, circumstances where an angry spouse to beat another spouse out of an equitable share of the marital property would file a divorce proceeding and say I'm discharged and you won't ever see a penny. I'm not saying that happened here, but that's certainly conceivable. He knew he was in a divorce, and surely, given what was going on in the bankruptcy court, the fact that there was discussion about whether to file or not, he had to know that the wife was out there. So I'm having a hard time following, I think, in fighting Judge Ross' questions, the same difficulty, how it is a bad thing, even if you call it a magical thing, that the marital property is not being distributed to creditors when there's a spouse there who has an interest in the property. And a pending petition for equitable distribution. If I may, Your Honor, the logic is actually the opposite, and that was addressed in the case of In re Pollard, which I cite in my brief. The very reason that we want the property to become property of the bankruptcy state, subject to the bankruptcy court's jurisdiction, subject to administration by the chapter seven trustee, and permitting the non-debtor spouse to have a claim for his equitable distribution rights in the pot is to prevent collusion, but the collusion is the other way. If you read In re Pollard, very reason that you're stating, Judge Ross, is that we don't want husbands and wives to collude. Collude to not be creditors. But here that's not an issue. Here that's not an issue, and Judge Thomas actually signed orders approving the chapter seven trustee's liquidation of Gary Fox's assets at the very same time, if you follow the reasoning of Judge Thomas in the district court, where they say that Gary Fox's assets are somehow now elevated over here into, and I can't pronounce the Latin phrase that Judge Hambrough used. The custodial agency. They can't have it both. I don't understand how it can be both ways. How can these assets be Gary Fox's property, which are property of the estate under 541, which his chapter seven trustee, of which I'm also one, and I administer chapter seven assets at the same time. The argument of the show is that what is property of the estate and what is not property of the estate is subject to state law. Correct. And this is how the judge, the current state law to be now. Obviously, Judge Markovitz and Schor disagreed with that. And Your Honor, if I may real quick. I only have a little bit of time left, but if I may real quickly. If we look at what happens every day in the real world, let's examine this. A minute a divorce complaint is filed. If you look at what they're saying in Shoal, and if you look at what they're saying in the Shoal decision, they're saying the divorce complaint in and of itself is not enough. You have to have a master's decision or you have to have a marriage settlement agreement. Because until you have that, nobody can seek contempt if the other party doesn't do what they're supposed to do. That's not reality because, look at it this way. Once a divorce complaint is filed, if Mr. Fox, forget about a bankruptcy case. If Mr. Fox wants to sell a piece of real estate, which was titled just in his name, he would have to sign a seller's affidavit. We all know seller's affidavits are standard of clothing. One of the questions is, is there a divorce pending? And the reason for that question, from a title insurance company's point of view, is that the minute that divorce complaint is filed, even though the real estate is titled Mr. Fox, his sole name in Pennsylvania, as we know, is a title state. The minute that divorce complaint is filed, Mrs. Fox had a claim. She had something. She had some hook into that property. And that's why once that divorce complaint is filed, Mrs. Fox has to sign the deed as well. That it goes a step further. Not only does she have a claim against the property, but the family court or whatever the court is that does the divorce distribution of assets is holding that property outside in order to make sure that those claims are litigated and dispersed properly. Not to put a point on it, but I understand Scholl to be saying it's not a claim at all. She owns the property. She's got an interest in the property, which is indivisible, and it can't be, it can't, it's not some money claim against it. It's her property. So you can't go into bankruptcy court and say,  when somebody else has got an interest in the property. That seems to be the philosophical foundation of Scholl. And I would submit to your honor that that's the very problem with the logic of Scholl. And if you look at this particular case, the Chapter 7 trustee went ahead and administered Mr. Fox's assets with Judge Thomas signing the orders, allowing him to sell property. How can that happen if you apply the logic that you just indicated, your honor,  of Mr. Fox and the Section 541? Maybe it shouldn't have happened. I would prefer, Judge Roth, to look at it more simply that the property of the estate, the claim of the non-debtor spouse arises the moment the divorce complaint is filed. That's why, for example, a title company would require her to join in any conveyance once a divorce complaint is filed. That's why we have a, that's why we used to have a. Yeah, but the flip to that argument is the title company thinks there's a cloud on title. And a property interest that the person has. So that would seem to probably use that argument to support Scholl as opposed to you. I disagree because her interest is a monetary interest for a claim of money. In other words, think of it this way, Judge Ambrose, that asset would secure, basically it's acting as collateral, so to speak, for the payment of whatever that equitable distribution monetary claim would be. That's the whole theory. We gotta hold on to it. We can't let him dissipate it because what if she's owed money at the end of the line? And I know I'm out of time, but just briefly, I think this was very well addressed. Have you reserved time for a vote? Yes, I did, Your Honor. That's fine. And I'll just use that if I may. In re first securities, the decision of this court, I think, is right on point. It talks about, in addition, as a debt is defined as a liability on a claim, it is coextensive with the definition of a claim, and both are construed broadly. Please bear in mind, in this case, Your Honor, in the stipulated facts, Counsel for Mrs. Fox stipulated that she had a claim as the date the bankruptcy case was filed. Yeah, but the question then becomes, is there something in addition? 5.3 obviously talks about that, so, and they stipulated. The good news about this case is whatever we do, it will have very limited effect because the 2005 amendments changed the whole. I actually thought about that as I came here, anticipating that question this morning. But remember, Your Honor, we still have the dischargeability in Chapter 13s, so it will still be relevant. Thank you. Morning, Your Honors. Nicholas Massington on behalf of the appellee, Laura Fox. Judge, if I may, I wanted to point out one factual element here. I think I can really sum up the two different positions here, both in terms of myself and Attorney Martin and Scholl versus Schor, from a bankruptcy versus a divorce standpoint. Attorney Martin is a bankruptcy attorney, he's a trustee. I'm a divorce attorney. So I came at it from a different angle. And I think Attorney Martin said at one point, the question is, then, under state law, because, I mean, he's on pretty solid ground in terms of what he's saying one normally needs to do in the context of a bankruptcy. In order to protect yourself, you have to file, within 60 days of the 341 meeting, that's the initial meeting of creditors, you have to file within 60 days a Section 523 complaint on dischargeability. Correct, Your Honor. There's one factual nuance here which Attorney Martin did not mention and I think affects that, however, in this particular case. If you review the record, Your Honor, there was a stipulation entered into by counsel from both parties before that deadline ended, saying relief from the stay was granted as to the divorce case and Ms. Fox could proceed with the divorce. What came up after the deadline passed was, oh yeah, we just meant she can proceed with the divorce, we didn't mean she could get equitable distribution, to which we responded by filing a motion with the bankruptcy clerk saying, come on, folks, how much word game play are we gonna play here? You gave us relief from the stay, you gave us a signed stipulation by counsel saying go forward with the divorce and then you're gonna turn around after the deadline and say, oh no, that didn't include equitable distribution. We're saying equitable distribution, divorce, it's the same complaint. You say the divorce, so that's the nuance I think is missed here. What did the judge respond to that? The judge responded by saying, don't worry about it. Under Scholl, you didn't need to file it anyway. We did file, and I disagree with Attorney Martin on that fact, we did file a motion for the extension of time. It was after the time had run and the stipulation got pulled out from underneath us, we filed a motion and said, hey, look, we had a stipulation. If that stipulation doesn't count, judge, then give us the relief of letting us file the complaint to determine dischargeability now and that's where Judge Thomas entered his original decision that said, no, I don't need to give you relief to file an extension of time because you didn't need to file a dischargeability complaint and that's the nuance here that takes it out of the realm of, they didn't do this. Well then, what is the status of the bankruptcy case right now? Bankruptcy is discharged, divorce was litigated, master's decision was entered. It was remanded, I think there was a second hearing on second issue, so they're waiting for an equitable distribution decision. So they're waiting for an equitable distribution decision. Correct. Is that primarily seeking money or in-kind distribution? I believe both, Your Honor. It's across the board. I mean, there was extensive estate. On that issue. So what happened is he got a discharge, Mr. Fox did, in bankruptcy. The question then becomes what, and certain properties were sold, but I take it the property that is under dispute in the divorce proceeding has not been sold and it is before the Pennsylvania State Court, is that correct? To my understanding, Judge, to my understanding it is. I did not handle the equitable distribution. It's interesting, Attorney Martin said she needed to file like any other creditor and my position to this court would be she's not like any other creditor. As Your Honors have pointed out, she's not a creditor in that sense. The question was, was it a money claim or a claim for property? Well, quite frankly, on the proof of claim form, it doesn't give you a slot to say, I want in-kind distribution of equitable distribution of this or that. So in that sense, sure, it was reduced to a dollar figure, but in the divorce complaint, I can assure you, it said the same thing every other divorce complaint in Pennsylvania says. She would like equitable distribution of the marital property. It didn't say, I want a dollar figure. There would be no reason to put it in there. What would happen, can you go back to bankruptcy court and have the court allow, pursuant to equitable polling, a non-dischargeability complaint to be filed? Is it too late? Is the case still open? The case is not, well, the case is only open here. No, the case is done. Again, I mean, Judge Thomas never, he never ruled on the extension of time, taking the simple position that, under his understanding of the law, as he understood it, quoting Shull, you didn't need an extension of time, you didn't need to do this. So the fact that you relied on a stipulation, perhaps inappropriately, which is the position that was taken, we relied on, doesn't matter, go forward, and we did go forward. I mean, and forgive me for being melodramatic in my brief, but I said, you know, what this did was turn divorce law into a game of survivor. Out will, out last, out play. The point is, you've got something out here where there's been a lot of policy decisions made by Congress. It would seem that there is one area that you might be able to help us on significantly, and that is, not bankruptcy, because you say you're not a bankruptcy attorney, but state law. What is state law as to the rights of spouses when there is a divorce decree filed and a petition for equitable distribution? My understanding, Judge, is being a tenants by the entirety state and being title blind, that automatically, all property of that estate acquired from the date they said I do to the date they said I don't is subject to the jurisdiction of that court, which is why, if husband has a stock account or a stock plan or a pension plan, he can't simply go to DuPont or somebody else and say, hey, I want to transfer this or that. If they know there's a divorce pending, they won't let him touch a thing. Even though his name's on it, wife's name's not on it, the property becomes the property of the divorce estate and is subject to equitable distribution. I can easily stop in a state court somebody from, for instance, the section in the Domestic Relations Code that says you can't transfer your car to your brother Joe for $100, otherwise we're gonna pull it back in. Well, there's a property right. Husband's name alone, his car, transfers it, signs the title over to brother, brother gives him $100, the state court has the right to come in to brother and say, no, we're taking the car back. He couldn't do that. There was a divorce action pending and you can't get rid of property in an effort to eliminate your spouse's right to equitable distribution. It's in the Domestic Relations Code. It's right in there, you can't do it and this is a very sophisticated, very clever, very complicated way of doing it. But for the Baptista decision, my argument today would have been, if this is allowed to happen, you can, and you have an unscrupulous attorney, you can literally rewrite divorce law in Pennsylvania as we know it by saying, hey, look, I'll put you in bankruptcy and now your spouse has to have the economic ability and the legal ability to know exactly how to go into bankruptcy court and stop this or else we get a windfall. Well, let's turn now, because you heard Mr. Martin say, the real evil here, the real concern is colluding spouses, not the spouses magic. There's a, I'll quote you a line out of the Shore decision which is in turn citing Pollard, says the debtor's spouse may intentionally allow all of the marital assets to pass to the non-debtor's spouse leaving nothing for creditors of the debtor's spouse. And then it goes on to say, this is a potential evil which is avoided by not going down the shoal line. What's your response to that policy argument? I mean, I cannot imagine it. It's funny that that comes up in this context because I do some bankruptcy work. Obviously, I have some knowledge of it and I do practice in front of Attorney Martin and Attorney Martin's first question is, have you transferred any property in the last two years? And the answer, and quite recently we had a case where the answer was, yes, I got divorced and they look at that. They go back and look at it. One of the things you have to disclose is whether you've transferred any property. So you're talking about people that would have to have a three to four year plan. Let's transfer property in 2003 to husband. Let's run up debts between 2003 to 2007 and then let's collude to file this bankruptcy in 2008. So they'll look back, I mean, that's virtually impossible. Is it impossible? Of course not. I mean, I suppose if you put your criminal mind to anything, you could come up with a million things to do. But then you get remarried in 2008. Yeah, exactly, exactly. But I mean, my gosh, the first question that trustees ask you in the 341 is if you transfer any property. And if you say, yes, I transferred it to my spouse, well, bells and whistles go off all over the place. Attorney Martin and I just litigated one of these three months ago where he wanted property back from my client. I said, this is a poor woman. She has nothing. This was a legitimate divorce five years ago. Well, I'm not sure it is. And we had an intellectual battle over what the property settlement agreement meant. So what I hear you saying is it's a little far-fetched. It's, I mean, I'm not that, I mean, I'm obviously not that bright to begin with, but it's virtually impossible. I got you. It's tough, tough, tough, Judge. I got you. In this case, what Mr. Martin is saying is, look, you knew what the rules were. You knew you had to file within 60 days. You thought that perhaps there was something cute being played because you were proceeding in state court, and therefore the other side seemingly understood that that's where you're going. But why wasn't the 523 non-dischargeability complaint filed? Just to protect yourself within 60 days. It wasn't filed because of the stipulation, Judge. Because of the stipulation that said, relief from the automatic stay is granted, go forward. I mean, it didn't just say, go forward with the divorce. It said, relief from the automatic stay is granted to wife to proceed with the divorce. That's exactly what it said, signed by both attorneys and filed before the deadline ran out. And the divorce complaint included the... Account for equitable distribution, account for alimony, all of your typical shotgun approach divorce counts. And is that in the record, the stipulation? Absolutely, Your Honor. If you look in my stipulated facts, it is in the record, and it is in there. Your Honor, you're correct. Attorney Martin is looking at it from a very technical bankruptcy. These are the deadlines, these are the procedures, et cetera, and that's why I don't do a lot of bankruptcy law, because detail like that drives me insane. Divorce, as the court well knows, is a little more liberal, a little more creative. We don't have statutes of limitation, but what I'm looking at it from is an equitable distribution standpoint, and I just cannot fundamentally... Forget the fact that, obviously, I want to do a job for my client, I want to win, this, that other thing. I cannot fundamentally understand how any court could allow a spouse to discharge, preemptively discharge another spouse's claims to equitable distribution. As I said, it would recreate divorce law in such a fashion that it would be absolutely a phenomenal tool. But the problem with bankruptcy is what you're saying, that in divorce courts, it may be more flexible. In bankruptcy, little things mean a lot. Absolutely, Judge. And but for the stipulation, I would... Well, not just but for the stipulation. We're looking at the factual point. Looking at Shoal, I didn't have to file anything. So if you go with the Shoal logic, no filing was required. I will tell you, I did not know that at the time, and it was fortuitous that that happened. My reliance was on the stipulation. My reliance was on the stipulation that said go forward. You have our blessing, go forward, which we did. And it wasn't until months after we began going forward that we got this, hey, you guys are in violation of the discharge. And we said, well, what are you talking about? We have a stipulation. Ah, the stipulation says divorce. Stipulation doesn't say equitable distribution. Okay. You know, that's... So the stipulation says that you have relief from the automatic stay to go forward with the divorce? Correct. But not with equitable distribution? It doesn't say, but not with equitable distribution. It says with the divorce action, I believe. And included in the divorce action... Is equitable distribution, alimony, and everything else. No further questions, thank you. Thank you, judges. We'll give you two minutes. Didn't you reserve time anyway? I believe I did. You've got three minutes. I didn't know how much I had used up before. No, that doesn't make any difference. The stipulation... You were on our time after you went over the 12 minutes. We differ from some of the other cities. Thank you. With all due respect to Mr. Massington, the stipulation has got nothing to do with this case. And it goes back to how, in my initial argument, the procedures in the Middle District in front of Judge Thomas for the 15 years that I've been practicing before him, before this case, would then, when you have a state court divorce, and you represent the non-debtor spouse, you do two things. One, you file your 523 complaint to preserve your rights to make your claim for equitable distribution, because you've got to do that within the 60 days. The second thing you have to do, because the state court divorce master won't proceed forward without it, is you have to file a motion to get relief from stay to allow the state court proceeding to move forward. Two things you need to do. You've got to preserve your claim, and then you've got to get relief from stay to allow the state court to go ahead and do its calculations and figure out who owes who what. If you look at the stipulation, because I drafted it, the stipulation is very clear. It permits, because there'd be no reason for me to oppose relief from stay to allow them to allow the divorce to proceed. So as a matter of courtesy to Attorney Anders, a divorce lawyer, I consented to relief from the automatic stay to allow the state court to proceed, because you also had custody issues. There was the divorce issue. There was the custody issue. There's alimony issues. There's alimony pendency lease date. There's cost and counsel fees. It has to proceed forward in state court. Custody does, for example. And the request for equitable relief was also part of it? Well, it's one of the things, a divorce complaint. But if you read that stipulation, it does not in any way give them an extension of time to file a 523. Does it allow them to go ahead with custody? It just says. Does it allow them to go ahead with alimony? It just says, Your Honor, they have relief from stay to proceed. It doesn't preserve any claims. Without custody, without alimony being itemized, they went forward with that? They went forward with everything, Your Honor. But I want to be clear. This stipulation has got nothing to do with this case. So say you in the proceedings before this particular case. Exactly. Because that stipulation did in no way preserve claims for anyone. In your opinion. Yes. I don't know why they didn't file their 523 complaint. But they didn't. Thank you. OK. Thanks. Counsel? Not done yet. One question. The stipulation that was entered into the record, you say, is in the appendix. I'm not sure it is. Are you sure about that? Oh, Your Honor, it may not be in the appendix. It's only a one paragraph. If counsel could just send it to the court, please. Supplement the record, please. Supplement the record. Thank you. Thank you. Take the matter under advisement. The next case is.